**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

MONU MONU,                                              )
                                                        )
    Petitioner,                                         )
                                                        )
v.                                                      )          Case No. CIV-26-812-D
                                                        )
MARKWAYNE MULLIN, et al.,                               )
                                                        )
    Respondents.                                        )

## <u>ORDER</u>

Petitioner Monu Monu filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241. [Doc. No. 1]. Petitioner is a citizen of India who entered the United States on or about February 27, 2023, and was placed into removal proceedings on March 1, 2023. The next day, he was released on an Order of Release on Recognizance. Petitioner was re-detained on March 17, 2026, and has been in the custody of the U.S. Immigration and Customs Enforcement (ICE) since then. Petitioner is currently detained pursuant to the mandatory detention provision contained in 8 U.S.C. § 1225(b)(2)(A). In his Petition, Petitioner contends that "[b]ecause [he] was released into the United States and lived in the community for years, his detention is governed by § 1226—not § 1225—and he is entitled to an individualized custody determination." [Doc. No. 1, at 2]. Because of his assertion that § 1225(b)(2)(A) does not apply to him, Petitioner contends he is being held in violation of the Immigration and Naturalization Act, 8 U.S.C. § 1101 *et seq*. (INA).

The matter was referred to United States Magistrate Judge Chris M. Stephens for initial proceedings in accordance with 28 U.S.C. § 636(b)(1)(B)-(C). [Doc. No. 3].

Respondents filed a Response in Opposition to the Petition for Writ of Habeas Corpus [Doc. No. 12], and Petitioner filed a reply. [Doc. No. 13]. Thus, the Court must "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made" and "may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *See* 28 U.S.C. § 636(b)(1); *see also* FED. R. CIV. P. 72(b)(3).

On May 12, 2026, the magistrate judge issued a Report and Recommendation [Doc. No. 14], recommending that the Court grant in part the Petition and order Respondents to provide Petitioner a bond hearing pursuant to 8 U.S.C. § 1226(a). Respondents filed a timely Objection to Report and Recommendation [Doc. No. 15], to which Petitioner filed a reply [Doc. No. 16].

First, Respondents object to the magistrate judge's conclusion that § 1226(a) applies to Petitioner's detention, and not § 1225(b)(2)(A), as suggested by Respondents. Generally, "§ 1225 mandates detention without the opportunity for a bond hearing for the noncitizens to whom it applies." *Hernandez v. Baltazar*, No. 1:25-cv-03094-CNS, 2025 WL 2996643, at *3 (D. Colo. Oct. 24, 2025) (citation omitted). In comparison, § 1226 provides the noncitizen with the opportunity for a bond hearing. *Id.*; *see also Aranda v. Olson*, No. 4:25-cv-156-GNS, 2025 WL 3499061, at *4 (W.D. Ky. Dec. 5, 2025) ("Overall, Section 1226(a) provides for a discretionary authority requiring an individualized bond determination before a noncitizen may be taken into custody.") (quotation and citation omitted).

Respondents contend that Petitioner is properly detained pursuant to § 1225(b)(2)(A), which provides:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A). Respondents assert that Petitioner is an "applicant for admission" because he is present in the United States and has not been admitted, citing § 1225(a)(1). *See* 8 U.S.C. § 1225(a)(1) ("An alien present in the United States who has not been admitted . . . shall be deemed for purposes of this chapter an applicant for admission.").

In previously construing § 1225(b)(2)(A), the undersigned concluded in *Colin* that the subsection "unambiguously requires that an 'applicant for admission' also be 'seeking admission' for the section to control." *See Colin v. Holt*, 2025 WL 3645176, at *4 (W.D. Okla. Dec. 16, 2025). This conclusion is in accord with *Santillan Quiroz*, in which the Tenth Circuit held that "§ 1225(b)(2)(A)'s application is limited to the border."[1] *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1240 (10th Cir. 2026).  Further, this Court has previously declined to find that refusing to self-deport or submitting an asylum application constitute "seeking admission" for purposes of § 1225(b)(2)(A). *Malacidze v. Noem*, No. CIV-25-1527-D, 2026 WL 227155, at *3 (W.D. Okla. Jan. 28, 2026); *see also Santillan Quiroz*,

---

[1] As noted by the Tenth Circuit, "the Second, Sixth, and Eleventh Circuits have each held that § 1225(b)(2)(A) does not apply to unadmitted noncitizens who, like Santillan Quiroz, are found in the country's interior." *Santillan Quiroz*, 180 F.4th at 1235 (citing *Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026), *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026), and *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Mia.*, 175 F.4th 1258 (11th Cir. 2026)); *but see Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026) and *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026).

180 F.4th at 1239 (footnote omitted) ("The only time a noncitizen can be said to be seeking admission is when he is seeking to enter the United States at the border. Since § 1225(b)(2)(A) applies only to those seeking admission, § 1225(b)(2)(A) is likewise limited to the border.").

In this case, because Petitioner has been residing in the United States for years and was present in the country when he was detained, Petitioner does not fall into the mandatory detention provision of § 1225(b)(2)(A). *See Colin*, 2025 WL 3645176, at *5; *Malacidze*, 2026 WL 227155, at *3. Accordingly, § 1226(a) controls Petitioner's detention, and Petitioner is therefore entitled to a bond hearing.[2] *See Santillan Quiroz*, 180 F.4th at 1251 n.13 (directing district court to order the government to provide the petitioner a bond hearing within 7 days "[b]ecause [the petitioner] can properly be subject to detention under § 1226(a).").

Further, Respondents argue that no matter which statutory provision the Court determines governs Petitioner's detention, Petitioner still falls under § 1225(b)(2)(A)'s categorical detention mandate. Specifically, Respondents argue:

> Within immigration law, there is a well-settled rule sometimes called the "entry-fiction doctrine." *See Altamirano Ramos v. Lyons*, 809 F. Supp. 3d 1015, 1025 (C.D. Cal. 2025). Under this rule, a noncitizen who is physically present or paroled into the country is "legally considered to be detained at the border and hence as never having effected entry into this country." *Alvarez-Garcia v. Ashcroft*, 378 F.3d 1094, 1097 (9th Cir. 2004). . . . Like the petitioner in *Thuraissigiam*, Petitioner "arrived in the United States at a time or place other than as designated." 8 U.S.C. § 1182(a)(6)(A)(i). He was "detained shortly after unlawful entry." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020); R&R, at 2. There can be no serious

---

[2] Given this determination, the Court declines to address Petitioner's remaining claims at this time.

dispute that at the time Petitioner was encountered shortly after making unlawful entry into the United States []he was deemed to be both an "applicant for admission" who was "seeking admission." 8 U.S.C. § 1225(b)(2)(A); *see Lopez v. CoreCivic Cimarron Corr. Facility*, CIV-25-1175-SLP, 2026 WL 165490, at *5 (W.D. Okla. Jan. 21, 2026) (noting that the petitioner there "was not at a port of entry awaiting admission into the United States when he was detained").

[Doc. No. 15, at 20].

The Court finds persuasive the Second Circuit's recent analysis of this issue:

We are equally unpersuaded by the government's contention that its reading "brings the statute in line with the longstanding 'entry fiction'" repeated throughout Supreme Court precedent, suggesting that noncitizens like Petitioner can be treated "as if stopped at the border" because they have never lawfully entered. Appellant's Br. At 43-44 (quoting *Thuraissigiam*, 591 U.S. at 139). Under the government's reading, Petitioner is still "seeking admission" because he had not lawfully entered.

However, that approach overreads the Supreme Court's "entry fiction" precedents and disregards a century of immigration law establishing the meaning of "entry" as the "coming of an alien from a foreign country into the United States." *United States ex rel. Volpe v. Smith*, 289 U.S. 422, 425 (1933). Indeed, it has long been settled that a noncitizen can effect an entry even by crossing the border illegally. *See Yamataya v. Fisher*, 189 U.S. 86, 99-102 (1903). The pre-1996 INA sought to "giv[e] due recognition to the[se] judicial precedents" by defining entry as the "coming of an alien from a foreign port or place or an outlying possession into the United States." *Landon v. Plasencia*, 459 U.S. 21, 29 n.6 (1982) (quoting S. Rep. No. 1137, at 4 (1952)). While [the Illegal Immigration Reform and Immigrant Responsibility Act of 1996] replaced that statutory definition of "entry" with "admission," it did not redefine "entry" or give any indication that it departed from these longstanding precedents.

Although the "entry fiction" doctrine allows the government to treat physical entrants as if still "on the threshold" if they are "detained shortly after unlawful entry," the reach of that doctrine is sharply limited. *Thuraissigiam*, 591 U.S. at 140 (internal quotation marks omitted). While the doctrine may extend further than the twenty-five yards and twenty-four hours at issue in *Thuraissigiam*, *id.* at 13, no one could seriously contend that it applies to a noncitizen like Petitioner who has been living in the United States for decades. Under settled Supreme Court precedent, "aliens who have once passed through our gates, *even illegally*, may be expelled only after

5

proceedings conforming to traditional standards of fairness encompassed in due process of law." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) (emphasis added). That is, "once an alien enters the country, the legal circumstance changes, . . . whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 553 U.S. 678, 693 (2001). The government's reading runs afoul of these fundamental principles.

*Cunha*, 175 F.4th at 85-86.

Though not binding on this Court, the Court finds the Second Circuit's analysis persuasive and agrees the entry-fiction doctrine cannot apply to noncitizens like Petitioner, who has been in the United States for over two years. *See also Rincon v. Hyde*, 810 F. Supp. 3d 101, 106 (D. Mass. 2025) ("[T]he Supreme Court has never applied the entry fiction doctrine to a case like this—to constitutionally justify the detention of a person living freely, for years, within the United States.").

**IT IS THEREFORE ORDERED** that the Report and Recommendation [Doc. No. 14] is **ADOPTED in part**,[3] and the Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Doc. No. 1] is **GRANTED in part**. **IT IS THEREFORE ORDERED** that Respondents shall provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a), **within 7 days of the date of this Order**, or release Petitioner. A separate judgment shall be entered.

---

[3] At this time, the Court declines to place the burden on the government to justify Petitioner's detention pending removal proceedings. *See Singh v. Grant*, No. CIV-26-279-J, 2026 WL 1035100, at *2 (W.D. Okla. Apr. 16, 2026) (finding a burden shift premature where "no immigration judge has conducted a bond hearing in Petitioner's case, much less allocated the burden of proof or applied the particular facts of this case to that evidentiary framework"); *see also Singh v. Figueroa*, No. CIV-26-600-R, 2026 WL 1181699, at *1 n.2 (W.D. Okla. Apr. 30, 2026) (same); *Gutierrez v. Garcia*, No. 2:25-CV-001145-WJ-KRS, 2026 WL 310064, at *6 n.3 (DN.M. Feb. 5, 2026) ("In the absence of a statutory mandate or binding precedent requiring burden shifting, the Court declines to specify or alter the burden of proof at this stage.").

6

**IT IS SO ORDERED** this 13th  day of August, 2026.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE